# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ISSA J. MITRI, | ) | CASE NO. 4:18-CV-2258 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| NABIL ABU RAHMA, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

In this tort action premised on diversity jurisdiction, *pro se* defendant Nabil Abu Rahma ("Rahma") has filed three motions to dismiss the first amended complaint ("FAC") of plaintiff Issa J. Mitri ("Mitri"). (Doc. No. 22 ["MTD I"]; Doc. No. 25 ["MTD II"]; and Doc. No. 33 ["MTD III"].) Mitri opposes the motions, and separately moves the Court for an order requiring the commencement of discovery. (Doc. No. 27 ["MTD II Opp'n"]; Doc. No. 34 ["MTD III Opp'n"]; Doc. No. 35 (Discovery Motion ["Dis. Mot."]).)[1] For the reasons that follow, the motions to dismiss are DENIED, and the motion to commence discovery is DENIED as MOOT.

---

[1] MTD I, though ultimately seeking dismissal of the action, is actually framed as an answer. As such, the Court finds that this initial motion is subsumed by later dispositive motions and a separate response from Mitri was unnecessary.

## I. BACKGROUND

All disputed facts are taken from the allegations in the FAC, and, for consideration of the present dispositive motions, are presumed to be true. Mitri is a retired pharmacist who lives in California. (Doc. No. 19 (FAC) ¶ 1.) In May 2017, Mitri met Rahma in an airport in Amman while traveling overseas. The two men struck up a conversation that included the virtues of doing business in the State of Ohio. (*Id*. ¶¶ 8–9.) Rahma, a resident of Ohio, advised Mitri that he owned a business in Youngstown, Ohio, and that he could put Mitri in some good investments in the area. (*Id*. ¶¶ 2, 9.) Rahma invited Mitri to come to Ohio so that he could introduce Mitri to some financial opportunities. (*Id*.) After returning to the United States, Rahma contacted Mitri on several occasions to discuss business ventures. One such venture involved Mitri extending a business loan to co-defendants Lena Amad Esmail ("Esmail") and Mohammad Hajjawi ("Hajjawi"). Mitri declined to make the loan. (*Id*. ¶ 10.)

In September 2017, Mitri accepted Rahma's invitation to visit Ohio and discuss business ventures with Rahma and to explore other investment opportunities. (*Id*. ¶ 11.) After advising Mitri against another opportunity he was considering, Rahma informed Mitri that he knew of a "great investment opportunity in a restaurant and grocery store" and promised to introduce him to the store's owners—Esmail and Hajjawi. (*Id*.) At the initial meeting, Esmail and Hajjawi offered to sell Mitri a 50% interest in the store in exchange for a capital investment of $90,000. (*Id*. ¶ 12.) Esmail and Hajjawi represented that the restaurant and market would be immediately profitable, and they guaranteed that Mitri would begin to see a return on his investment in the first few months. (*Id*. ¶¶ 12–13.)

Rahma vouched for Esmail and Hajjawi and assured Mitri that the business venture

would yield a very good return. (*Id.* ¶ 14.) In addition, Rahma offered to assist Mitri by reviewing and executing all documents necessary to memorialize the transaction, and, for a monthly fee, he further agreed to monitor the business on Mitri's behalf to ensure that it was not mismanaged. (*Id.* ¶ 15.) Based on defendants' various representations, Mitri agreed to purchase a 50% interest in Knafa Corporation, the corporation through which Esmail and Hajjawi ran Knafa Restaurant and Grocery, and executed an "Ohio Limited Power of Attorney Form" ("POA"). (*Id.* ¶ 16; *see* Doc. No. 19–1 (POA).) Mitri signed the POA as the principal. (FAC ¶ 17.)

Presumably on the strength of the POA, Rahma entered into a "Close Corporation Agreement ['CCA']," which memorialized the sale of the one-half interest in the restaurant venture to Mitri. (*Id.* ¶ 19; *see* Doc. No. 19–2 (CCA).) He also entered into a number of other agreements on behalf of Mitri. One agreement purportedly bound Mitri to assume corporate liabilities in connection with a lease agreement for certain real property. (FAC ¶ 21; *see* Doc. No. 19–3.) Another agreement, referred to in the FAC as the "General Partnership Agreement ['GPA']," required Mitri to "fund 50% of the ongoing operating losses" of the restaurant and market business. (FAC ¶ 23; *see* Doc. No. 19–4 (GPA).)

Mitri maintains that he never realized the profits he was promised from the restaurant venture. (FAC ¶ 26.) Further, he insists that he did not authorize Rahma to enter into the agreements executed by Rahma on his behalf, which modified the terms and conditions of the oral agreement he had with Esmail and Hajjawi. (*Id.* ¶¶ 23–24.) On September 28, 2018, he filed suit in federal court, seeking damages from Esmail, Hajjawi, and Rahma. The FAC raises four claims: common law fraud (Count One); conversion-civil theft (Count Two); negligence, negligent misrepresentation, and breach of fiduciary duty (Count Three); and breach of fiduciary

duty (Count Four). Counts One and Two are brought against all three defendants, while Count Three is asserted against Rahma and Count Four is brought against Esmail and Hajjawi.

Through a series of dispositive motions, Rahma now seeks dismissal of Counts One, Two, and Three. The motions are largely duplicative. A common theme woven through the motions is that Rahma was authorized by the POA to enter into the agreements on behalf of Mitri that materially changed the terms of the parties' oral business agreement and vitiate Mitri's tort claims.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the nonmoving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874–75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint[]"); *see also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document[]").

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Because the first cause of action in the FAC sounds in fraud, this claim must also meet the heightened particularity requirements of Fed. R. Civ. P. 9(b). "'Rule 9(b) states that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Jackson v. Segwick Claims Mgmt. Servs., Inc.*, 699 F.3d 466, 475 (6th Cir 2012) (quoting *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quotation marks and citation omitted)); *see Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 758 (S.D. Ohio 2013) ("Fraud claims are analyzed under the heightened pleading standard in Federal Rule of Civil Procedure 9(b)".) "This includes alleging the 'time, place, and content' of the fraudulent acts, the existence of a fraudulent scheme, the intent of the participants in the scheme, and 'the injury resulting from the fraud.'" *Jackson*, 699 F.3d at 476 (quoting *Heinrich*, 688 F.3d at 403).

5

In deciding a motion to dismiss under Rule 12(b)(6), the Court generally may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. But as the Sixth Circuit has held, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss).

The agreements appended to the FAC, including the POA and the GPA, are central to the claims contained therein. Accordingly, the Court may take judicial notice of these agreements without converting the Rule 12(b)(6) motions into ones for summary judgment. *Commercial Money Ctr.*, 508 F.3d at 335–36.

### III. DISCUSSION

#### A. Common Law Fraud

Mitri's first cause of action sounds in fraud. In order to state a claim for fraud or intentional misrepresentation under Ohio law, a plaintiff must allege: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such an utter disregard and recklessness as to whether it is true or false that the knowledge may be inferred; (4) with the

intent of misleading another into relying on it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Groob v. Keybank*, 843 N.E.2d 1170, 1178 (Ohio 2006); *see Kuvedina*, 946 F. Supp. 2d at 758.

In Count One, Mitri alleges that defendants "made a series of false representations and concealments concerning material facts in order to induce [Mitri] to invest in Knafa Corporation, Knafa Restaurant and Grocery." (FAC ¶ 28.) Specifically, he alleges that he reasonably relied to his detriment on the "stated revenue projections" offered by defendants, as well as the promise that he would be "paid a monthly coupon on his investment." (*Id.* ¶ 29.) He further alleges that, "[i]n furtherance of the fraud scheme" and without authorization, Rahma executed the aforementioned documents that materially changed the terms of the parties' oral agreement. (*Id.* ¶ 31.) He avers that defendants were aware of the falsity of their misrepresentations and concealments when they were offered to induce Mitri to enter into the underlying transaction, that Mitri reasonably relied on these representations/concealments to his detriment, and that he was damaged in an amount certain. (*Id.* ¶¶ 32–34.)

Rahma claims that Count One fails because the POA vested in Rahma the authority to enter into agreements on Mitri's behalf, including the GPA, which "directly conflict[s] with the alleged misrepresentations" Mitri maintains he justifiably relied upon to his detriment. (MTD II at 203.[2]) Rahma underscores the fact that there is no specific allegation that Mitri was fraudulently induced to enter into the POA and insists that parol evidence of oral representations cannot be utilized to undermine the specific terms of the GPA, which contains an integration clause. (*Id.*)

---

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

Rahma's entire argument is premised on the assumption that he was authorized to execute the GPA and other agreements. Regardless of whether the POA was fraudulently procured, Mitri has alleged that the POA did not give Rahma the authority to enter into agreements on Mitri's behalf that materially changed the terms of the parties' oral agreement. Mitri further alleges that the original oral promises made to him by defendants were knowingly false and that the agreements that followed the POA were executed in furtherance of defendants' alleged fraudulent investment scheme. At least at this stage in the proceedings, the Court finds that Mitri has alleged—with the specificity required by Rule 9(b)—sufficient factual allegations to establish the fraudulent nature of the scheme as a whole. *See, e.g., Raftery v. S. Lee Corp.*, No. 2:07-cv-649, 2007 WL 4085289, at *4 (S.D. Ohio Nov. 15, 2007) (finding allegations that plaintiffs relied to their detriment on defendants' false representations that they would be entitled a percentage of the profits from the sale of Sara Lee products were sufficient to set forth a claim of common law fraud under Ohio law).

Rahma's reliance on the parol evidence rule is also misplaced. "The parol evidence rule is a rule of substantive law intended to protect the integrity of final, written contracts." *Brothers v. Morrone-O'Keefe Dev. Co., LLC*, No. 03AP-119, 2003 WL 22999474, at *4 (Ohio Ct. App. Dec. 23, 2003) (citing *Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank*, 662 N.E.2d 1074, 1080 (Ohio 1996)). In general, the parol evidence rule provides that "absent *fraud*, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000) (emphasis added) (quotation marks and citation omitted). "Nevertheless, the parol evidence rule does not prohibit a

party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Id.* at 789 (recognizing, in part, that "it was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud . . . .") (quotation marks and citation omitted).

Here, Mitri alleges that he was fraudulently induced to enter into the agreement to buy into the grocery store and restaurant, and that the written agreements that followed were part of the fraudulent scheme to make Mitri liable for the operating losses of the business. (*See* FAC ¶¶ 28–29, 31.) Further, the principle that parol evidence is available to establish fraudulent inducement "does not lose its force merely because the considered written agreement contains an integration clause." *Galmish*, 734 N.E.2d at 790. Because the existence of a written contract with an integration clause does not foreclose the argument that the contract was fraudulently induced, Rahma is not entitled to dismissal of Count One.

### B. Conversion-Civil Theft

In Count Two, Mitri alleges that defendants "unlawfully and maliciously converted funds invested by [him] without any intention of ever repaying the same and with the intent of permanently depriving [him]" of his investment. (FAC ¶ 35.) He maintains that he was the rightful owner of the funds he invested in defendants' business, and he has suffered damages by defendants' alleged wrongful conversion. (*Id.* ¶¶ 36–37.) These allegations are directed to the essential elements of a conversion claim under Ohio law, which are: (1) plaintiff's rightful ownership of the converted property; (2) conversion of the property by the defendant; and (3) damages. *Kuvedina*, 946 F. Supp. 2d at 761.

The only argument Rahma offers in support of dismissal of Mitri's conversion claim as to

him is that any duty to repay Mitri's investment is governed by the GPA. (MTD II at 204.) He argues that "[u]nder Ohio law, 'the existence of a contract action . . . excludes the opportunity to present the same case as a tort claim." (*Id*. (quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co*., 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996))). It is true that Ohio law does not permit the repackaging of contract claims as tort actions. *See Nichols v. Chi. Title Ins. Co*., 669 N.E.2d 323, 332 (Ohio Ct. App. 1995). "Where the duties imposed upon the parties are governed by contract, then contract law governs the recovery." *Clevenger v. Dillard's Dep't Stores, Inc*., No. 1:02-cv-558, 2007 WL 2902933, at *27 (S.D. Ohio Oct. 2, 2007).

Here, Rahma is not a party to the GPA. The duties and responsibilities that Rahma is alleged to have breached flow not from a contract but from Rahma's alleged role as a fiduciary or agent of Mitri. Because these duties are independent of any duty created by contact, the presence of a contract does not defeat Mitri's tort claim against Rahma.[3] *See Wolfe v. Cont'l Cas. Co*., 647 F.2d 705, 710 (6th Cir. 1981) (recognizing that "a tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed[]").

---

[3] That said, the Court questions whether this conversion claim is actionable, given the fact that Mitri has not alleged that defendants are required to return specific funds and not merely a certain determinable sum of money. *See Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012) (observing that money may be the subject of a conversion claim only if "identification is possible and there is an obligation to deliver the specific money in question") (quotation marks and citation omitted); *NPF IV v. Transitional Health Servs*., 922 F. Supp. 77, 81 (S.D. Ohio 1996) (noting that an action for "conversion of money will not lie unless identification is possible and there is an obligation to deliver the specific money in question"); *Dice v. White Family Cos., Inc*., 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007) (similar). It is also unclear whether some of the claims are duplicative. Because the parties did not address and/or fully develop these issues in the briefing, and because discovery will proceed in the same manner with or without each individual claim in the FAC, the Court will reserve these issues for another time.

## C. Negligence, Negligent Misrepresentation, and Breach of Fiduciary Duty

Count Three of the FAC purports to assert a claim against Rahma for negligence, negligent misrepresentation, and breach of fiduciary duty. Specifically, Mitri alleges that Rahma undertook the duty to monitor the investment in the restaurant and grocery on Mitri's behalf. (FAC ¶ 41.) He further alleges that Rahma breached his duty of care by "failing to properly analyze and evaluate the prospective investment, failing to properly review and advise [] Mitri on the terms and conditions of the investment, and failing to properly advise [] Mitri on the value of Knafa Corporation and Knafa Restaurant and Grocery." (*Id*. ¶ 42.)

In support of dismissal of this claim, Rahma offers only his general denial of the factual allegations supporting the claim. (MTD II at 205.) Specifically, Rahma insists that he "made no false claims about the investment or location," that he advised Mitri to invest "at his own risk," and that he provided Mitri with all of the necessary "documentation prior to entering" into the various agreements on Mitri's behalf. (*Id.*) He also represents that he made no guarantees as to the potential profitability of the venture and did not hold himself out as a financial advisor. (*Id.*) But on a Rule 12(b)(6) motion, the district court must construe the complaint in the light most favorable to the *plaintiff* and must presume all factual allegations in the complaint as true. *Tacket v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009); *see Iqbal*, 556 U.S. at 678. Rahma's disagreement with the factual allegations in the FAC is insufficient to support dismissal.

The Court finds that Mitri has alleged sufficient factual allegations which, if true, would establish that Rahma was acting as Mitri's agent when he entered into various agreements on Mitri's behalf. Whether an agency arrangement between Mitri and Rahma actually existed, and

whether Rahma breached a fiduciary duty that grew out of any such agency, are questions of facts that cannot be resolved on a motion to dismiss. *See, e.g., Park v. Acierno*, 826 N.E.2d 324, 331-32 (Ohio Ct. App. 2005). For now, this claim shall remain in the action.

   **D.   Motion to Compel Discovery**

In addition to opposing Rahma's dispositive motions, Mitri has separately moved for the immediate commencement of discovery in this action. In support of his motion, he offers his suspicion that Hajjawi and Esmail have effectively sold the restaurant and market without his consent and without tendering the proceeds from the sale to him. (Disc. Mot. at 302–03.) Mitri suggest that this latest development "is simply another step in the fraudulent scheme." (*Id*. at 303.)

To the extent Mitri seeks expedited discovery under the Federal Rules of Civil Procedure, the motion is DENIED. Rule 26(d) provides generally that discovery may not begin prior to the Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). But Rule 26(d) also provides that expedited discovery may be conducted prior to that conference when authorized by court order. *Id*. The determination of whether to permit expedited discovery lies within the discretion of the district court. *See Lemkin v. Bell's Precision Grinding*, No. 2:08-CV-789, 2009 WL 1542731, at *1 (S.D. Ohio June 2, 2009) (citing *Qwest Commc'ns Int'l Inc. v. Worldquest Networks, Inc*., 213 F.R.D. 418, 419 (D. Colo. 2003)); *Arista Records, LLC v. Does 1-15*, 2:07-CV-450, 2007 WL 5254326, at *2 (S.D. Ohio Nov. 5, 2007). The party seeking expedited discovery bears the burden of demonstrating good cause for it. *See Obeidallah v. Anglin*, No. 2:17-cv-720, 2017 WL 5192925, at *2 (S.D. Ohio Nov. 9, 2017) (noting that "[c]ourts considering a motion for expedited discovery [including court within the Sixth Circuit] typically apply a good cause

standard[]"); *Qwest Commc'ns*, 213 F.R.D. at 419. In determining whether good cause exists, the Court will consider whether evidence may be lost or destroyed with time and whether the scope of the proposed discovery is narrowly tailored. *See Caston v. Hoaglin*, No. 2:08-CV-200, 2009 WL 1687927, at *2 (S.D. Ohio June 12, 2009).

Mitri has failed to identify the scope of the expedited discovery he wishes to pursue (other than offering his general desire to obtain documents and conduct depositions), so the Court is unable to determine whether the requested discovery is narrowly tailored. (Disc. Mot. at 303.) Moreover, Mitri has supported his request with only his bare suspicion that the business has been sold. Accordingly, Mitri has failed to meet his burden of demonstrating good cause to warrant expedited discovery under Fed. R. Civ. P. 26(d).

To the extent that Mitri simply requests that discovery proceed following the scheduling of a case management conference and the conducting of a Rule 26(f) conference, the motion is DENIED as MOOT. Now that the Court has resolved the pending dispositive motions, it shall schedule this matter for a case management conference, after which the parties will participate in the Rule 26(f) conference and discovery will commence.

### IV. CONCLUSION

For the foregoing reasons, Rahma's motions to dismiss are DENIED and Mitri's motion to compel discovery is DENIED as MOOT.

**IT IS SO ORDERED**.

Dated: December 12, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**